IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

| | |
|---|---|
| JEFFREY J. KRUSE AND LISA K. KRUSE<br><br>*Plaintiffs*,<br><br>vs.<br><br>STYROPEK USA, INC. AND BASF CORPORATION<br><br>*Defendants*. | No. _____<br><br><br><br><br>**PLAINTIFFS' ORIGINAL COMPLAINT** |

NOW COME Plaintiffs, Jeffrey J. Kruse and Lisa K. Kruse, and in support of their Complaint against Styropek USA, Inc. and BASF Corporation, hereinafter Defendants, respectfully shows the Court as follows:

## VENUE AND JURISDICTION

1. This Court has jurisdiction over the lawsuit pursuant to 28 U.S.C. §1332(a)(1) because Plaintiffs and Defendants are citizens of different states and the amount in controversy exceeds $75,000.00 excluding interest and costs.

2. Venue is proper pursuant to 28 U.S.C. §1391(a) as a substantial part of the acts and omissions occurred in this judicial district.

## PARTIES

3. Plaintiffs, Jeffrey J. Kruse and Lisa K. Kruse, are adult residents of the state of Iowa residing in Marengo, Iowa County, Iowa.

4. Defendant, Styropek USA, Inc. is a Texas Corporation with its principal place of business in Texas, and doing business in the State of Iowa. This Defendant may be served with

1

process through the Iowa Secretary of State, with service directed to Styropek USA, Inc., 16945 Northchase Dr., Ste. 1560, Houston, Texas 77060.

5. Defendant, BASF Corporation is a Delaware Corporation with its principal place of business in New Jersey, and doing business in the State of Iowa. This Defendant may be served as follows: BASF Corporation, c/o Reg. Agent, CT Corporation System, 400 E. Court Ave., Des Moines, IA 50309.

## FACTS

6. Jeffrey Kruse was a production worker at Whirlpool Corporation located in Amana, Iowa from 1989-2021. From 1999-2021, Mr. Kruse worked as a Die Mold Setter, Team Leader, and Training Team Leader in the Expanded Polystyrene (EPS) department.

7. EPS is a rigid, closed cell, thermoplastic foam material produced from solid beads of polystyrene, which is polymerised from styrene monomer and contains an expansion gas (pentane) dissolved within the polystyrene bead.

8. The EPS unit at Whirlpool processes raw polystyrene and related polymer materials which were supplied by Defendants. The process involves using steam, water, and time, to transform the raw materials into finished molded Styrofoam parts which are then used in refrigerator assemblies. Defendants supplied small materials in granular or pellet form, in large bags received at the plant via tractor trailer, which are then drawn through a vacuum system and steam-pressure expander to create small beads. The beads are then drawn through additional machinery systems to create final molds.

9. Mr. Kruse's job duties within the EPS department from 1999-2021 included operating and maintaining machinery and equipment. In the course of such work, Mr. Kruse was exposed, through inhalation, ingestion, and dermal contact, to harmful levels of benzene,

butadiene, and styrene through his work with Defendants' products. The benzene, butadiene, and styrene Mr. Kruse was exposed to while performing his duties were manufactured, supplied, sold, marketed and/or distributed by Defendants.

10. On or about June 23, 2021, Jeffrey Kruse was diagnosed with acute myeloid leukemia (AML). His exposures to Defendants' benzene, butadiene, and styrene products were a legal cause of his AML, including multiple related adverse blood effects and cellular abnormalities, genotoxic effects and resultant DNA and chromosomal damage. Plaintiff, Lisa Kruse was and remains the wife of Jeffrey Kruse during all relevant times.

## COUNT ONE – NEGLIGENCE

11. Plaintiffs would show that Jeffrey Kruse was exposed to a deadly situation by Defendants in this case. Plaintiffs allege, as more specifically set out below, that Jeffrey Kruse contracted AML, and such illness was proximately caused by Defendants' negligent acts, and by Jeffrey Kruse's exposures to products designed, produced, manufactured, marketed, placed into the system of commerce, sold or used by Defendants.

12. Jeffrey Kruse's illness and Plaintiffs' subsequent damages are a direct and proximate result of the negligence of Defendants or, where applicable, the employee or the agent of Defendants.

13. Defendants, at all times material to this action, had a duty to any and all consumers and workers, including Jeffrey Kruse, to exercise reasonable care in creation, manufacturing, production, and distribution of its respective products into the stream of commerce, including a duty to assure the products did not pose a significantly increased risk of injury, including, without limitation, AML. Defendants breached the duties owed to Jeffrey Kruse and Plaintiffs and were negligent in the following respects:

a. Defendants knew that the products they utilized, distributed, marketed, and/or manufactured were deleterious, poisonous, carcinogenic, and highly harmful to Jeffrey Kruse's body and health; notwithstanding which, Defendants failed to take any precautions or to warn Jeffrey Kruse of the dangers and harm to which he was exposed while handling these products;

b. Defendants knew that products used by or in proximity to Jeffrey Kruse were carcinogenic, deleterious, and highly harmful to his body and health and that Jeffrey Kruse would not have known of such dangerous properties; notwithstanding which, Defendants failed to provide Jeffrey Kruse with sufficient knowledge as to what would be reasonably safe and sufficient wearing apparel and proper protective equipment and appliances to protect him from being damaged by exposure to such products;

c. Defendants knew that the products used by or in proximity to Jeffrey Kruse contained carcinogenic and highly harmful substances to the human body and health; notwithstanding which, Defendants failed to take any precautions or to exercise care by placing any warnings or cautions on the containers of such products or the products themselves to warn the handlers thereof the dangers to health in coming into contact with these products;

d. Defendants knew that the products used by or in proximity to Jeffrey Kruse contained deleterious and carcinogenic substances; notwithstanding which, Defendants failed to take reasonable care to warn Jeffrey Kruse of said danger and/or instruct Jeffrey Kruse in the proper handling of said products or to take proper precautions or exercise care to protect Jeffrey Kruse from harm and failed to timely adopt and enforce a safety plan method of handling products;

e. Defendants knew or should have known that their products that they introduced into the stream of commerce were carcinogenic and failed to adequately warn;

f. Defendants supplied benzene, butadiene, and styrene products with marketing, design, and/or manufacturing defects;

g. Defendants committed acts or omissions while having a right to control;

h. Defendants failed to properly exercise the right to control;

i. Defendants failed to provide a safe place to work;

j. Defendants failed to provide adequate safety equipment;

k. Defendants failed to monitor chemical and toxic substance levels in the workplace;

4

l.  Defendants supplied products with marketing, design, and/or manufacturing defects; and

m.  Such other acts or omissions of negligence, gross negligence, malice and/or strict products liability that may be proven at trial.

14. Such acts and omissions constituting negligence were a proximate cause of the illness of Jeffrey Kruse and injuries and damages sustained by Plaintiffs, including but not limited to:

a.  Loss of earnings and earning capacity, past and future;

b.  Reasonable and necessary medical expenses, past and future;

c.  Pain, suffering and emotional distress, past and future;

d.  Loss of function of mind and body, past and future;

e.  Loss of consortium or companionship by Lisa Kruse, past and future.

## COUNT TWO – PRODUCT LIABILITY

15. All of the allegations contained in the previous paragraphs are re-alleged herein.

16. The products and/or materials to which Jeffrey Kruse was exposed were designed, produced, manufactured, marketed, sold and/or otherwise put into the stream of commerce by Defendants, and were used for their intended purpose.

17. Plaintiffs would show that Defendants sold the products, the products were defective, and this defect rendered the products unreasonably dangerous. The products were expected to and did reach Jeffrey Kruse without substantial change in their condition.

18. Plaintiffs would further show that the products were inherently dangerous, defectively designed, inspected, tested, manufactured, or otherwise defective and Defendants failed to give the users adequate warnings or instructions concerning product dangers that were known or should have been known to the Defendants.

19. The defective condition of Defendants' products and failures to warn on the part of Defendants rendered such products unreasonably dangerous at the time they left the hands of Defendants and were the proximate cause of Jeffrey Kruse's illness and death and the damages sustained by Plaintiffs, including but not limited to:

   a. Loss of earnings and earning capacity, past and future;

   b. Reasonable and necessary medical expenses, past and future;

   c. Pain, suffering and emotional distress, past and future;

   d. Loss of function of mind and body, past and future;

   e. Loss of consortium or companionship by Lisa Kruse, past and future.

## **COUNT THREE – PUNITIVE DAMAGES/MALICIOUS ACTS**

20. All of the allegations contained in the previous paragraphs are re-alleged herein.

21. The actions and inactions of all the Defendants, and or alternatively the employees or agents of Defendants, and their predecessors-in-interest, whether taken separately, or together, were of such a character as to constitute a pattern or practice of intentional wrongful conduct and/or malice resulting in the illness and damages to Plaintiffs.

22. More specifically, Defendants, or alternatively the employees or agents of Defendants, and their predecessors-in-interest, consciously and/or deliberately engaged in fraud, wantonness and/or malice with regard to Mr. Kruse. Defendants had actual awareness of the extreme degree of risk associated with exposure to the benzene, butadiene, and styrene products they utilized, manufactured, processed, and/or distributed, and nevertheless proceeded with conscious indifference to the rights, safety, and welfare of Mr. Kruse by failing to act to minimize or eliminate these risks. Therefore, Defendants are guilty of gross negligence for which they should be held liable in punitive and exemplary damages to Plaintiffs.

23. Plaintiffs will show that the injuries and resulting damages were directly and proximately caused by the fraud, malice, willful acts and/or omissions, or gross neglect of the Defendants herein, their agents, servants, employees, managers, superintendents, supervisors and officers. Plaintiffs will further show that if each of the acts of negligence, alleged by Plaintiffs did not independently constitute fraud, malice, willful acts and/or omissions, or gross neglect then certainly all of the said acts or omissions combined and in the aggregate constituted fraud, malice, willful acts and/or omissions, or gross neglect and proximately caused Plaintiffs' damages.

24. Viewed objectively from the standpoint of these Defendants, the acts or omissions involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others and of which these Defendants had actual, subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety or welfare of others. Thus, Plaintiffs seek exemplary damages in an amount in excess of the jurisdictional limits of this Court.

## JURY DEMAND

25. Plaintiffs request a jury trial.

## CONCLUSION

WHEREFORE, Plaintiffs, Jeffrey J. Kruse and Lisa K. Kruse pray this Court enter Judgment against Defendants for damages as sought herein together with interest thereon at the legal rate, costs of court, and for other such additional and further relief, special and general, at law and in equity, which Plaintiffs shows just and proper in accordance with the law.

Respectfully submitted,

*/s/ Peter G. Gierut*
Peter G. Gierut     AT0010608
**Gallagher, Millage & Gallagher, PLC**

3870 Middle Road
Bettendorf, IA 52722
Phone: 563-355-5303
Fax: 563-388-9240
pgierut@gmglawfirm.com


Keith E. Patton, Esq.
**PATTON LAW, P.C.**
*Subject to Admission Pro Hac Vice*
Texas Bar No. 24032821
New Mexico Bar No. 148510
500 Copper Ave NW, Suite 100
Albuquerque, NM 87102
Phone: 505-910-4800
Fax:  505-910-4382
keith@pattonlaw.com

**ATTORNEY FOR PLAINTIFFS**

8

Case 1:23-cv-00044-CJW-KEM    Document 1    Filed 06/21/23    Page 8 of 8